# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ELAINE BONIN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>v.<br><br>CBS RADIO, INC.,<br><br>        Defendant. | Case No.: 16-cv-674<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Elaine Bonin (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## NATURE OF ACTION

1. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Defendant in negligently, knowingly and/or willfully transmitting SMS text messages *en masse* to Plaintiff's and Class members' cellular telephones without their prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter referred to as the "TCPA").

2. Defendant has violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), without their prior express consent within the meaning of the TCPA.

3. Plaintiff brings this action for actual damages, injunctive relief and statutory damages resulting from Defendant's illegal actions.

## JURISDICTION AND VENUE

4. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 28 U.S.C. § 1331; 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012) (holding that federal courts have federal question jurisdiction over TCPA claims.).

5. This Court has personal jurisdiction over Defendant because the conduct at issue occurred in or was directed toward individuals in the state of Wisconsin. Plaintiff received unsolicited SMS text messages from Defendant. Defendant broadcast unsolicited SMS text messages to cellular telephones, including Plaintiff's, that are assigned a Wisconsin-based telephone number. Defendant has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Wisconsin. Defendant does substantial business in Wisconsin.

6. Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because a substantial part of the events giving rise to the claims, namely automated telephone calls/text messages to persons in this District and debt collection activities, occurred in this District.

## PARTIES

7. Plaintiff Elaine Bonin ("Bonin") is an individual citizen of the State of Wisconsin, who resides in Franklin, Wisconsin.

8. Defendant CBS Radio, Inc. ("CBS") is a foreign corporation with its principal place of business located at 1271 Avenue of the Americas FL 44, New York, NY 10020.

9. CBS is one of the largest major-market broadcast media operators in the United States, currently owning and operating 117 radio stations in 26 markets and reaching more than 72 million consumers nationwide each week. http://www.cbsradio.com/profile.

10. CBS owns and operates the radio station "670 The Score," WSCR ("670 The Score"), a sports-format radio station covering the Chicago market. http://chicago.cbslocal.com/category/sports/.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call, including sending a text message, to a wireless number in the absence of an emergency or the prior express written consent of the called party.

13. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls and texts whether they pay in advance or after the minutes are used.

14. The FCC, has ruled that the word "call" in the TCPA includes both voice calls and text calls, and applies whether the text messages were sent by regular telephone transmission or over the internet to a wireless device. "TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 56-62 (July 10, 2015), (available at "https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.") (Reaffirming the FCC's 2003 ruling that text messages are

3

"calls" under the TCPA and further ruling that text messages sent "internet to phone" and by other sources are also "calls.")

15. A court in this circuit has also held that §227 of the TCPA applies to text messages. *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010).

16. One of the most prevalent bulk advertising methods employed by companies such as Defendant involves the use of "Short Message Services" ("SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to users' cell phones."[1]

17. SMS messages are directed to a wireless device through a telephone number assigned to the device. When an SMS message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless phones are carried on their owner's person, SMS messages are received virtually anywhere in the world.

18. Unlike more conventional advertisements, SMS advertisements can cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized. This is true for persons who are in "traditional" wireless telephone plans or in "pay-as-you-go" plans."

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), *available at* http://www.pewinternet.org/2010/09/02/cell-phones-and-american-adults/ (last visited June 6, 2016).

4

19. Moreover, even if an unauthorized SMS text advertisement contains information about how the consumer can opt out, the method of opting out requires the consumer to send a return text message. Doing so also costs the consumer money and/or "minutes" deducted from the consumer's wireless data plan.

20. The TCPA "generally prohibits autodialed calls to wireless phones," but "provides an exception for autodialed and prerecorded message calls...made with the prior express consent of the called party." *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 512 (E.D. Wis. 2014) citing *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559 ¶ 9 (Jan. 4, 2008); 47 U.S.C. § 227(b)(1)(A)(iii).

21. On February 15, 2012, the FCC released a Declaratory Ruling wherein it clarified that a party must obtain **prior express written consent** from the recipient prior to making automated telemarketing calls to the recipient's cellular telephone. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2012 FCC Declaratory Ruling"), 27 F.C.C.R. 1830, 27 FCC Rcd. 1830, 55 Communications Reg. (P&F) 356, 2012 WL 507959 (Feb, 15, 2012), at ¶ 2.

22. Due to growing concern over unwanted SMS text message advertisements, the FCC recently updated its rules on consent, requiring "prior express written consent" for calls or SMS text messages that contain an "advertisement" or "telemarketing." *See* 47 C.F.R. § 64.1200(f)(8).

23. The Court is bound by all of the FCC's final orders relating to the TCPA. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, footnote 4 (E.D. Wis. 2014) citing *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the

5

Case 2:16-cv-00674-LA   Filed 06/14/16   Page 5 of 14   Document 5

Hobbs Act, the FCC's TCPA orders are binding); *Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding).

## FACTUAL ALLEGATIONS

24. At all times relevant, Bonin is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

25. Bonin purchased a TracFone and was assigned a phone number.

26. TracFones are prepaid wireless phones. The user must purchase "minutes" that are loaded onto the phone in advance of calls or texts and are then deducted when the person talks on the phone or sends or receives text messages. http://www.tracfone.com/.

27. TracFone charges minutes, which must be pre-purchased, to view text messages.

28. On Sunday, January 3, 2016, Bonin received a text message from number 67011. A screenshot of Bonin's Tracfone text message from CBS Chicago, Inc. is attached as Exhibit A.

29. 67011 is the text messaging number of 670 The Score. It is listed on their website, http://chicago.cbslocal.com/text-alerts/.

30. CBS's text message to Bonin's TracFone listed the score for a National Football League game between the Detroit Lions and the Chicago Bears. *See* Exhibit A.

31. CBS sent several additional text messages to Bonin.

32. On Sunday, February 7, 2016, Bonin received another text message from CBS. This message referenced the final results of the Super Bowl. A screenshot of the text message is attached as Exhibit B.

33. On Tuesday, February 9, 2016, Bonin received another text message from CBS. This message referenced an injury to a member of the Chicago Bulls basketball team. A screenshot of the text message is attached as Exhibit C.

6

34. Also on Tuesday, February 9, 2016, Bonin received another text message from CBS. This message stated that the Chicago White Sox baseball team had signed a player. A screenshot of the text message is attached as Exhibit D.

35. On March 15, 2016 at 2:20 PM, Bonin received two additional text messages from CBS. One message stated that the Chicago Bears football team had signed a player. A screenshot of the text message is attached as Exhibit E. The other message stated that a member of the White Sox had retired. A screenshot of the text message is attached as Exhibit F.

36. On March 21, 2016, Bonin received another text message from CBS. This message referenced the White Sox. A screenshot of the text message is attached as Exhibit G.

37. On April 1, 2016, Bonin received another text message from CBS. This message referenced the Chicago Blackhawks hockey team. A screenshot of the text message is attached as Exhibit H.

38. On April 17, 2016, Bonin received three text messages from CBS. Two message referenced the Blackhawks. The other message referenced the Bears. Screenshot of these text message are attached as Exhibits I, J and K.

39. On April 23, 2016, Bonin received another text message from CBS. This message referenced the Chicago Cubs baseball team. A screenshot of the text message is attached as Exhibit L.

40. On May 10, 2016, Bonin received another text message from CBS. This message referenced the Kentucky Derby. A screenshot of the text message is attached as Exhibit M.

41. At no time did Bonin provide CBS or 670 The Score with the number of her Tracfone phone. Bonin has no interest in Chicago sports.

42. At no time did Bonin provide her prior express written consent, or any other form of consent, to CBS or 670 The Score, or to any of its affiliates, agents or subsidiaries, to receive any text messages, prerecorded, or automated calls/texts to her TracFone cellular telephone.

43. Each unsolicited text message from CBS cost Bonin 0.3 minutes of her Tracfone allotment. *See* "FAQ: How much does the text messaging feature cost?" http://www.tracfone.com/text_msg/index.jsp #a_txtfaq.

44. CBS is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39) ("The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation.")

45. All telephone contact by CBS to Bonin on her TracFone cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

46. The telephone number that CBS used to contact Bonin, made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

47. Bonin did not provide "prior express consent" to CBS, or to any of its affiliates, agents or subsidiaries, allowing CBS to place telephone calls or text messages to Bonin's TracFone cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

48. CBS's telephone calls/texts to Bonin's Tracfone cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

49. CBS's SMS advertisements were sent to Bonin's cellular phone utilizing an "automatic telephone dialing system" for non-emergency purposes and in the absence of Bonin's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

50. Under the TCPA, the burden is on Defendants to demonstrate that Bonin provided his prior express consent within the meaning of the statute.

51. The Seventh Circuit has held that the "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242, 1251-52 (11th Cir. 2014) ("called party" means the current subscriber and not the prior subscriber or intended recipient for purposes of the TCPA).

52. After CBS's first text message to Bonin's wireless phone, CBS had actual or constructive knowledge that Bonin's wireless telephone number was assigned to Bonin and not another person. "TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 40:

> We clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such.

## COUNT I

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.**

53. Bonin incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

54. The foregoing acts and omissions of CBS constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

9

55. As a result of CBS' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Bonin and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

56. Bonin and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by CBS in the future. Bonin and Class members are also entitled to an award of attorneys' fees and costs.

## COUNT II

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.***

57. Bonin incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

58. The foregoing acts and omissions of CBS constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

59. As a result of CBS' violations of 47 U.S.C. § 227 *et seq.*, Bonin and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. Bonin and Class members are also entitled to and do seek injunctive relief prohibiting CBS' violation of the TCPA in the future.

61. Bonin and Class members are also entitled to an award of attorneys' fees and costs.

## CLASS ACTION ALLEGATIONS

62. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated, defined as:

> All persons within the United States who, on or after June 7, 2012, received a non-emergency text message from or on behalf of CBS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice, and who either did not provide their cellular telephone number to CBS or who revoked prior express consent to contact the person's cellular phone.

Plaintiff Bonin represents, and is a member of, the Class. Excluded from the Class is Defendant CBS and any entities in which CBS or its parent company has a controlling interest; CBS's agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family; and claims for personal injury, wrongful death and/or emotional distress.

63. Bonin does not know the exact number of members in the Class, but Bonin reasonably believes that Class members number at minimum in the hundreds, if not thousands.

64. Bonin and all members of the Class have been harmed by the acts of CBS.

65. This Class Action Complaint seeks injunctive relief and money damages.

66. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by CBS and/or its agents.

67. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

   a. Whether CBS and/or its agents made non-emergency calls/texts to Bonin's and Class members' cellular telephones using an automatic telephone dialing system and/or an artificial or prerecorded voice;

  b. Whether CBS can meet its burden of showing it obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), to make such calls;

  c. Whether CBS' conduct was knowing and/or willful;

  d. Whether CBS is liable for damages, and the amount of such damages; and

  e. Whether CBS should be enjoined from engaging in such conduct in the future.

  68. Bonin asserts claims that are typical of each Class member. Bonin will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

  69. Bonin has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

  70. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against CBS is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

  71. CBS has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Bonin alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

12

Case 2:16-cv-00674-LA Filed 06/14/16 Page 12 of 14 Document 5

# JURY DEMAND

72. Bonin hereby demands a trial by jury.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

B. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff Bonin seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff Bonin seeks for herself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F. Such other relief as the Court deems just and proper.

Dated: June 14, 2016

          **ADEMI & O'REILLY, LLP**

    By:   /s/ John D. Blythin
           Shpetim Ademi (SBN 1026973)
           John D. Blythin (SBN 1046105)
           Mark A. Eldridge (SBN 1089944)
           3620 East Layton Avenue

                                                Cudahy, WI 53110
                                              (414) 482-8000
                                              (414) 482-8001 (fax)
                                              sademi@ademilaw.com
                                              jblythin@ademilaw.com
                                              meldridge@ademilaw.com